IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAQUELINE PELT, *et al*,

    Plaintiffs,

v.                                       Civil Action No. 8:22-cv-00429-PX

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al*,

    Defendants.

\*\*\*

**<u>MEMORANDUM OPINION</u>**

This action arises out of a multi-agency search warrant executed at the Plaintiffs' home in the early morning hours of February 22, 2019. The parties have since engaged in extensive discovery. Now certain Defendants Prince George's County ("PGC") and Prince George's County Police Detective Michael Trader ("Detective Trader"), as well as Maryland State Police ("MSP") and MSP Sergeant Patrick Lane ("Sergeant Lane"), Sergeant Scott Collier ("Sergeant Collier"), Sergeant Jason Ewig ("Sergeant Ewig"), Corporal Dustin Brill ("Corporal Brill"), Corporal Rhett Jackson ("Corporal Jackson"), Corporal William Posey ("Corporal Posey"), Corporal James Warrick ("Corporal Warrick"), and Senior Trooper Steven Maldonado ("Trooper Maldonado"), move for summary judgment in their favor. ECF Nos. 91 & 92.[1] The motions are fully briefed, and no hearing is necessary. D. Md. Loc. R. 105.6. For the reasons that follow, the motions are granted.

---

[1] Defendant Department of Homeland Security ("DHS") did not move for summary judgment in its favor. Accordingly, this opinion does not reach the potential liability of DHS based on the conduct of its agents. For clarity, when the court refers to "Defendants" in this decision, the reference is limited to the movants. ECF Nos. 91 & 92.

I.    **Factual Background**

In January 2019, Department of Homeland Security ("DHS") Special Agent, John Van Wie ("Agent Van Wie"), began investigating Plaintiffs' estranged family members, Ronald and Anthony Pelt, for check fraud. ECF No. 91-10 at 4. Specifically, Anthony Pelt was alleged to have used a fraudulent check to purchase $3,100.62 worth of goods from Home Depot in December 2018, and Ronald Pelt was banned from Home Depot for attempting the same in November 2018. *Id.* At that time, it was unclear whether the fraud merited federal prosecution, so Agent Van Wie sought the assistance of MSP officers. ECF No. 92-1 at 4; ECF No. 92-10 at 6–7; ECF No. 92-12 at 7–8, 13.

MSP Sergeant Lane assigned Trooper Maldonado as the state case agent to work with Agent Van Wie. ECF No. 92-12 at 7–8. This was Trooper Maldonado's first investigation with a federal agency. *Id.* at 7. Together, Agent Van Wie and Trooper Maldonado discovered that Anthony and Ronald had defrauded or stolen thousands of dollars from businesses and individual victims in Maryland, Virginia, and New Jersey. *Id.* at 4, 14–15. They also learned that Ronald has a lengthy criminal history for similar crimes dating back to 2014, to include shoplifting, theft, fraud, larceny, grand larceny, and most recently, obtaining merchandise with a fraudulent check. ECF No. 91-4 at 6.

As part of its investigation, the task force tried to find out where Anthony and Ronald were living. Motor Vehicle Administration records reflected Plaintiffs' residence, 2503 Gerry Court in Clinton, Maryland ("the residence"), as a possible address for Ronald, ECF No. 92-12 at 10–11. Also, Ronald had given the residence as his address when he was arrested in January 2019. ECF No. 92-1 at 4; ECF No. 91-10 at 10. Accordingly, Trooper Maldonado, Sergeant

Lane, and Agent Van Wie began to surveille the residence. ECF No. 92-1 at 4; ECF No. 91-10 at 4.

During the surveillance, the officers "had sights on" the front and back doors to "see if [they could] observe Ronald at that address." ECF No. 92-12 at 12. They did not. *Id.* Also, on four separate occasions that same year, the Plaintiffs had invited officers to search the residence for Ronald. ECF No. 95-4 at 5. But Ronald had not lived there for twenty years. ECF No. 91-10 at 10; ECF No. 92-10 at 5. Nor had any of the Plaintiffs – Don Pelt ("Don"), his wife Jacqueline Pelt ("Jacqueline"), or their daughter Syria Pelt ("Syria") – spent any time with Ronald or communicate with him. ECF No. 92-14 at 5. Only occasionally would they receive junk mail in Ronald's name at their home, which they would throw away. ECF No. 95-4 at 4. Trooper Maldonado also conducted a search of the trash from the residence, during which he found a defense attorney's solicitation to represent "Alfred Hicks," Ronald's alias. ECF No. 91-10 at 10; ECF No. 92-12 at 18; ECF No. 95-4 at 4.

Based on this investigation, Trooper Maldonado applied for a search warrant for the residence. ECF No. 91-4; ECF No. 91-10 at 10. As to the factual bases for the warrant, Trooper Maldonado detailed Ronald's criminal history for theft, fraud, shoplifting, and grand larceny. *Id.* He next described that on October 25, 2018, Ronald had used a fake check issued from Woodlawn Auto Center in Virginia to purchase $2,475 worth of merchandise from a Home Depot also located in Virginia; and that as proof of identification, Ronald had displayed a Maryland driver's license in the name "Floyd Darrel Ashwood." *Id.* The Trooper also noted that Ronald had given the residence as his home address during a 2019 arrest. *Id.*

Trooper Maldonado also described the results of the trash search, and that surveillance revealed only three vehicles parked at the residence, all registered to Don. *Id.* Last, Trooper

Maldonado described the nature of the scheme: that investigators believed Ronald would purchase items at different Home Depots located in Virginia using fraudulent checks and then return the items to other Home Depots in Prince George's County, Maryland. *Id.* All totaled, according to Trooper Maldonado, Ronald netted around $22,000 in fraudulent refunds.

As for manner of entry, Trooper Maldonado did not include in the warrant application any information that suggested special precautions were needed. He did not, for example, aver the presence of any firearms, explosives, or other dangerous weapons in or around the residence. Nor did he reference any cohabitants with histories of violence or related criminal records. *Id*.

The district judge signed the warrant the same day, expressly authorizing seizure of the following enumerated items:

1. Visa gift cards
2. Master Card gift cards
3. Macy's gift cards
4. Tools
5. Tile
6. Boxed merchandise
7. Checks
8. Printers
9. Accounting numbers
10. Routing numbers
11. Body shop checks
12. Any items that have been previously identified by receipts
13. Home Depot receipts
14. Receipts from other stores where checks were used
15. Maryland driver's license not belonging to Pelt
16. Out of state license not belonging to Pelt

*Id.* at 13.

Thereafter DHS agents and MSP officers prepared for the search. Without exception, DHS's "Special Response Team" ("SRT") assumed responsibility for entering and securing the residence, to be followed by MSP officers, task force agents, and Detective Trader to search the residence for items authorized under the warrant. ECF No. 91-10 at 6; ECF No. 95-6 at 4. As

for the SRT Team, Agent Michael Honicker served as the tactical commander and team supervisor.  ECF No. 91-6 at 4.  Agent Honicker also approved the SRT Tactical Operations Plan for the residence.[2]  *Id.  See also* ECF No. 91-5 at 7.  He also recommended a tactical entry based on "extensive criminal histories," of the suspects.  ECF No. 92-10 (Agent Honicker recommending SRT entry based on review of risk assessment).  Tactical teams are usually employed when execution of a warrant may "morph into a…shooting, a barricade, hostage barricade…[or] crisis."  ECF No. 91-5 at 6.  But Trooper Maldonado admitted that based on his investigation, "there was no sign of any violence."  ECF No. 97-6 at 7.

On February 22, 2019, around 5:55 AM, SRT surrounded the home with fourteen agents.  ECF No. 95-17 at 5.  Despite the non-violent, rudimentary nature of the fraud scheme under investigation, the team burst through the home after a brief knock on the rear-sliding glass door.  ECF No. 95-6 at 7; ECF No. 91-6 at 5–8.  They breached the rear-sliding glass door, shattering the glass, and tore down the frame to the main-front entrance.  *Id.*  SRT next deployed a "flash-bang" – a diversionary device which produces a simultaneous loud boom, bright light, and lots of smoke.  ECF No. 91-5 at 4; ECF No. 91-7 at 3.  The team also broke through the garage door, shed door, glass door to the humidor, and an interior locked door to the Pelts' office.  ECF No. 91-6 at 6,8; ECF No. 91-16 at 15; ECF No. 95-17.

Predictably, Jacqueline began screaming and Don went to the bedroom window to see who had broken into his home.  ECF No. 91-8 at 4.  SRT members announced, "police with a warrant!"  ECF No. 95-17 at 5.  When Don and Jacqueline opened their bedroom door, they were confronted with long barrel guns pointing at them and shouts to put their hands on their heads.  ECF No. 91-7 at 4.  SRT agents next handcuffed them and sat them on the living room couch.  As Syria emerged from her bedroom, officers "swung [her] around" and handcuffed her.  ECF

---
[2] The SRT Tactical Operations Plan was not made part of the summary judgment record.

No. 95-4 at 6. Jacqueline, who is sixty-six years old, started experiencing chest pain. After officers took her blood pressure, they summoned an ambulance to transport her to the hospital. ECF No. 95-4 at 7.

As for the search team, officers were responsible for specific locations and searched the house for two hours. ECF No. 97-1 at 9. The yield was a single piece of mail. ECF No. 92-11 at 12.[3] In the end, the residence sustained substantial damage to all exterior doors and the adjacent walls associated with the entry. ECF No. 95-1 at 11; ECF No. 95-16; ECF No. 97-1 at 19; ECF No. 91-14. The Plaintiffs spent roughly $10,000 to repair the damage. ECF No. 91-14 at 1.

On February 22, 2022, Plaintiffs filed their Complaint against DHS in this Court, and on March 21, 2022, filed a separate complaint in Prince George's County Circuit Court against PGC, MSP and John Doe officers. PGC and MSP noted removal to this Court. Next, all Defendants filed motions to dismiss, which the Court granted in part and denied in part. ECF Nos. 20 & 29; *Pelt v. Md. Dep't of State Police*, No. 22-cv-00690-PX at ECF Nos. 21 & 22. The Court also ordered Plaintiffs to file a consolidated amended complaint against all Defendants. ECF No. 29. Plaintiffs have since twice amended the pleading, ECF Nos. 30 & 82. They also now make clear that they are not pursuing any claims against PGC, MSP or Corporal Jackson. *See* ECF No. 95-1 at 9 n.4. & 97-1 at 12.

Defendants move for summary judgment on all claims. ECF Nos. 91 & 92. For the following reasons, the Court grants summary judgment in Defendants' favor.

---

[3] Among the named Defendant officers, each searched the following respective areas: Detective Trader (kitchen, hallway, garage, humidor room and shed); Sergeant Lane (hallway); Sergeant Ewig (living room); Corporal Warrick (bedrooms); Corporal Brill (bedrooms and the basement). ECF No. 91-10 at 7.

**II.     Legal Standard**

A motion for summary judgment brought pursuant to Rule 56 shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(d); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Factually unsupported claims and defenses may not proceed to trial. *Bouchat*, 346 F.3d at 526.

With this standard in mind, the Court turns to the motions.

III.   Analysis

   A. Gross Negligence (Count I)

The Plaintiffs allege that MSP Sergeants Lane, Collier, and Ewig; Corporals Posey, Warrick and Brill; and Trooper Maldonado, as well as PGCP Detective Trader, executed the search warrant in a grossly negligent manner, resulting in unnecessary and gratuitous damage to the residence. ECF No. 82 at 11. Defendants move for summary judgment, contending that no evidence demonstrates any of them failed to take due care in searching the home. ECF No. 91-1 at 10; ECF No. 92-1 at 11–13.

In Maryland, gross negligence generally arises where a defendant fails to perform a "manifest duty" in "reckless disregard of the consequences as affecting the life or property of another," or in "thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619 (1985)). *See also Cooper v. Rodriguez*, 443 Md. 680, 714 (2015) (noting that tortious conduct committed with gross negligence defeats the defense of public official immunity). In the law enforcement context, an officer may be found liable for gross negligence "only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist." *Cooper*, 443 Md. at 708. *See also Sudbrook v. State*, 153 Md. 194, 203 (1927) ("police officers acting under statutory authority must use reasonable care in performing his official duties,"). Whether a defendant officer behaved in a grossly negligent manner is fact-bound, and usually reserved for the factfinder unless "the facts are so clear as to permit conclusion as a matter of law." *Cooper*, 443 Md. at 708-09.

When viewing the record in the light most favorable to the Plaintiffs, the Court must agree with the Defendants that no reasonable juror could find any of them executed their duties in a grossly negligent manner. The record universally supports a clear division of labor between the entry and the search. SRT, comprised solely of DHS agents, executed a tactical entry which caused the lion's share of the damage. Several doors were busted down, the alarm system disabled, and perimeters breached. ECF No. 95-17 at 5. Indeed, the damage was significant, accounting for nearly the entire $10,000 of repair costs. ECF No. 91-14.

By contrast, no evidence suggests that any of the remaining individual officers participated in the entry or the physical damage accompanying the entry. ECF Nos. 92-2–6 & 19 at 2. As the MSP Operational Plan affirms, each Defendant was a member of the *search* team permitted into the residence only *after* the breach of the perimeter doors was complete. ECF No. 91-10 at 7; ECF No. 91-14; ECF No. 91-15 (search team officers admitting to searching areas after the entry team secured location). And each Defendant flatly denied taking part in the tactical breach or the resulting damage. ECF Nos. 92-2–6 & 19 at 2; ECF No. 91-16 at 14.

The Plaintiffs have generated no real evidence to create a genuine issue of disputed fact on this point. To be sure, they have vividly illustrated the damage caused by SRT's entrance. But none of the remaining Defendants were part of that team. And as for any interior damage apart from the destruction related to entry, the Plaintiffs provide proof of two small holes found in the interior living room wall and basement wall. ECF No. 91-14 at 4 & 6. Each hole cost about $66 to repair. *Id.* Given the relatively minor nature of that damage, no rational juror could conclude that the search team performed their duties with sufficient recklessness or thoughtless disregard for the Plaintiffs' basic rights. *Cooper,* 443 Md. at 703. Summary judgment on the gross negligence claim must be granted in their favor.

Trooper Maldonado and Sergeant Lane merit separate treatment because each did occupy a greater role in the investigation. Sergeant Lane, as Trooper Maldonado's direct supervisor, assigned Trooper Maldonado as the MSP case agent to work alongside Agent Van Wie. ECF No. 91-3 at 3. Trooper Maldonado was also responsible for swearing out the search warrant application and preparing the MSP Operational Plan. ECF No. 91-10 at 6. But neither Sergeant Lane nor Trooper Maldonado participated in the entry itself. ECF No. 92-12 at 21; ECF No. 95-6 at 4. And according to the SRT commander, Agent Honiker, *he* made the decision to employ the SRT for the tactical entry. ECF No. 91-5 at 7.

The Plaintiffs, in response, seem to suggest that Trooper Maldonado and Sergeant Lane could be held to account because they helped "plan" the over-the-top tactical entry. ECF No. 97-1 at 14. The fallacy in this argument, however, is that no record evidence supports that either Trooper Maldonado or Sergeant Lane participated in the planning, preparation, or decision making related to SRT's mission. Rather, Agent Honicker commanded the SRT entry. ECF No. 91-6 at 5; ECF No. 91-5 at 7. Nor does Trooper Maldonado's drafting of the MSP Operational Plan change the analysis. The MSP Operational Plan makes no reference to *who* decided to make a tactical entry. ECF No. 95-6. It does not discuss the manner of entry at all apart from the basic proposition that SRT would make entry and secure the residence prior to the search commencing. ECF No. 97-12.[4] Because no evidence supports that either Sergeant Lane or Trooper Maldonado played any role in the DHS tactical team entry, summary judgment must be granted in their favor as well.

---

[4] Trooper Maldonado was asked in his deposition, "What were the circumstances where that led to the determination that a SWAT team conducting an entery was warranted?" He responded, "[W]e felt that based on Ronald Pelt's previous criminal history, he might have been a danger to our team going in, because I needed other assistance, we felt that we needed those that are already trained for entries." ECF No. 97-6 at 7. Although Trooper Maldonado's use of the plural "we" suggests possible MSP input, Plaintiffs failed to ask any follow up questions or otherwise adduce any evidence that either Sergeant Lane or Trooper Maldonado had any actual involvement in the planning and execution of SRT's entry.

The Court next turns to the Fourth Amendment claims.

**B. Fourth Amendment Violation Arising from the Search (Count II)**

The Fourth Amendment to the United States Constitution protects persons from "unreasonable government intrusion" of places where persons enjoy a reasonable expectation of privacy — chief among them, one's home. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). Fourth Amendment protection extends to the manner in which the officers execute a search. Accordingly, officers may violate a person's Fourth Amendment rights by causing the excessive and unnecessary destruction of his property. *United States v. Ramirez*, 523 U.S. 65, 71 (1998). As the Fourth Circuit has aptly noted, one of the greatest "abuses of totalitarian states involve the wanton destruction of property, not simply the unauthorized entry upon it." *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). Thus, while the Fourth Amendment must remain flexible enough to contemplate incidental damage to property during the warrant execution, officers may not "ransack premises at will." *Id.* As with all Fourth Amendment challenges, the touchstone is reasonableness. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Accordingly, to sustain a claim on the basis of excessive damage during a search warrant execution, a plaintiff must adduce some evidence that the officer's conduct was unreasonable in light of all known circumstances. *Cybernet*, 954 F.3d at 168–170 (4th Cir. 2020) (citing *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 335 (7th Cir. 2011)) (applying the rule set out in Graham to a Section 1983 claim for excessive force as to property under the Fourth Amendment).

When viewing the evidence most favorably to the Plaintiffs, the only conceivable theory of relief lies in the excessiveness of SRT's tactical entry. The nature of the investigation and the search itself clearly sounded in fraud. ECF No. 91-10 at 4. The perpetrator, Ronald Pelt, had a history of *only* theft and fraud. And no evidence suggests that any occupant of the home would

pose any kind of danger to the entry team. Yet, fourteen DHS agents violently entered the home; they shattered the glass rear-door entrance, busted down interior and exterior doors; ripped out the home alarm system, and breached door for which the Plaintiffs had offered to give them keys. ECF No. 91-10; ECF No. 97-6 at 7. But again, the problem for the Plaintiffs is that the damage is solely attributable to SRT. No evidence links any of the state or county officers to the tactical entry at all. And the minimal damage to the interior of the residence which could conceivably be pinned on the Defendants simply does not rise to the level of an unconstitutional ransacking. Accordingly, summary judgment must be granted in their favor on the Fourth Amendment claim.[5]

### C. "Participation" Violation against Detective Trader (Count III)

Plaintiffs front a novel Fourth Amendment claim in Count III, contending that their Fourth Amendment rights to be free from unreasonable search and seizure were violated because Detective Trader, as a Prince George's County law enforcement officer, participated in the search warrant that authorized only MSP Officers to execute the search. ECF No. 82 at 13; ECF No. 95-1 at 18. Plaintiffs rely on the Fourth Circuit decision in *Buonocore v. Harris*, 134 F.3d 245 (4th Cir. 1998), which held that government agents may not facilitate a warranted search of a home at the behest of a private individual for items unrelated to those specified in the warrant. This claim, too, fails as a matter of law.

First, *Buoncore* is a mismatch. Detective Trader is hardly a private citizen. Rather, he is a sworn law enforcement officer who participated in a search within his police jurisdiction. Second, the execution of warrant did not exceed the scope of the judicial authorization. The warrant permitted MSP officers to carry out the search with "proper assistance." ECF No. 91-4

---

[5] Because the Court grants summary judgment in Defendants' favor on the Fourth Amendment claims, it need not reach their affirmative defense of qualified immunity.

at 13. Proper assistance includes a Prince George's County officer whose jurisdiction covers the county in which the residence was located. In this respect, MSP officers were wise to enlist the assistance of a duly sworn county officer. *Cf. Hill v. State*, 134 Md. App. 327, 340 (2000) (upholding warrant and its execution obtained by University of Maryland police precisely because they executed search with Prince George's County Detectives and thus "act[ed] under color of authority of the Prince George's County Police Department."). Summary Judgment is thus granted in Detective Trader's favor as to Count III.

### IV.    Plaintiffs' Request to Reopen Discovery

The Court lastly turns to Plaintiffs' request to reopen discovery. To obtain such relief, Plaintiffs must satisfy the good cause standard of Federal Rule of Civil Procedure 16(b)(4). *InfoTek Corp. v. Preston*, 626 F. Supp. 3d 885, 896 (D. Md. 2022). Good cause is shown when the movant demonstrates that despite diligent efforts, discovery deadlines could not be met. *Doe v. Vanderpool*, 2024 WL 5055689, at *1 (D. Md. Dec. 9, 2024). *See also Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999).

Plaintiffs ask the Court to reopen discovery so that they may explore the roles of MSP officers whom they say they had not identified until after discovery closed. ECF No. 97-1 at 29; ECF No. 75-1. But MSP produced to Plaintiffs as early as January 2021 documents which identified all MSP officers involved in the investigation and search of the residence. ECF No. 103 at 3; ECF No. 103-1 at 2. And yet, Plaintiffs never asked for the additional discovery they seek now, nor did they ever complain that MSP's discovery responses were inadequate. Accordingly, the Court concludes that Plaintiffs have failed to demonstrate good cause sufficient to reopen discovery. The motion is denied.

## V. Conclusion

For the reasons stated above, the motions for summary judgment are granted in favor of the Defendants PGC and Detective Trader; MSP and Sergeants Lane, Collier, and Ewig; Corporals Posey, Jackson, Warrick, and Brill; and Trooper Maldonado. Plaintiffs' request to reopen discovery is denied.

A separate Order follows.

| 3/14/2025 | /S/ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |